IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| v. | * Criminal Case No.: SAG-22-0125 |
| | * |
| **RODNEY GAINES,** | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Rodney Gaines is one of thirteen defendants charged in this complex narcotics conspiracy case. Mr. Gaines first appeared in court on April 8, 2022, and has remained in pretrial detention since that date. A four-week jury trial for the now-remaining five defendants who have not pled guilty is scheduled to commence on September 3, 2024. Mr. Gaines has filed a motion to dismiss the charges against him, alleging a speedy trial violation. ECF 343. This Court has considered Mr. Gaines's motion, the Government's opposition, and Mr. Gaines's reply. ECF 361, 378. This Court also heard argument on this motion on June 21, 2024. ECF 434. For the reasons stated below, despite the length of time for which this matter has been pending, careful consideration of the factors relevant to a defendant's rights under the Speedy Trial Act and the U.S. Constitution leads to the conclusion that Mr. Gaines's speedy trial rights have not been violated.[1]

---

[1] At the motions hearing, several other defense attorneys expressed an intent to join Mr. Gaines's speedy trial motion on behalf of their clients. This Court notes that each of those defendants has a weaker position than Mr. Gaines because they have consistently consented to the exclusion of time under the Speedy Trial Act as this litigation proceeded. And because this Court concludes that there has been no speedy trial violation even as to Mr. Gaines, who expressly asserted his speedy trial rights, it reaches the same conclusion with respect to the consenting defendants, several of

I. PROCEDURAL HISTORY AND RELEVANT FACTS

The procedural history of this case, which has been pending for more than two years and involves thirteen defendants, is lengthy and complex. On April 6, 2022, a federal grand jury returned an indictment charging Mr. Gaines and four co-defendants with various drug and gun offenses. ECF 18. Mr. Gaines was specifically charged with conspiracy to distribute controlled substances, conspiracy to possess firearms in furtherance of drug trafficking, and possession with intent to distribute controlled substances. *Id.* Mr. Gaines first appeared in court on April 8, 2022. ECF 32. At a detention hearing on April 11, 2022, the U.S. Magistrate Judge concluded that Mr. Gaines should be held in pretrial detention as a result of the strength of the evidence against him, his prior criminal history, his prior poor performance on court supervision, and previous incidents in which he had failed to appear in court and had attempted to evade law enforcement. ECF 217.

Over the next several months, the Government located and arrested Mr. Gaines's co-defendants and began producing discovery. All parties consented to exclusions of time pursuant to the Speedy Trial Act, and the prior district judge in this case entered orders determining that the ends of justice warranted such exclusions. ECF 73, 74, 85, 86. On September 7, 2022, a federal grand jury returned a superseding indictment adding five additional co-defendants. ECF 99. The superseding indictment added one new substantive count against Mr. Gaines for possession with intent to distribute controlled substances. *Id.*

Once again, the Government began arresting the newly added co-defendants and all parties agreed to another exclusion of time pursuant to the Speedy Trial Act. ECF 112. In a status report dated November 3, 2022, the Government stated that it "anticipates an additional indictment for at

---

whom have not been incarcerated while awaiting trial or have been detained for a shorter window of time.

2

least two individuals and possibly more in the future due to an ongoing investigation." ECF 161. That November, 2022 status report stated, for the first time, that Mr. Gaines no longer consents to waive his Speedy Trial Act rights.[2] *Id.* On November 9, 2022, a federal grand jury returned a second superseding indictment, this time adding an additional two defendants but not altering the charges against Mr. Gaines. ECF 166.

On January 20, 2023, once the two new defendants obtained counsel, this Court held a conference call to set a schedule in the case. ECF 210. The parties agreed that the Government would produce all discovery by February 10, 2023, the defendants would file their motions by April 7, 2023, and a motions hearing would be held on August 15, 2023, after briefing had been completed. *Id.* But on March 30, 2023, counsel for Mr. Gaines filed a "Motion to Suspend Current Motions Briefing Schedule and Hearing," citing an inability to adequately prepare for the hearing and file motions because the U.S. Marshals Service moved Mr. Gaines to a pretrial detention facility in Youngstown, Ohio. ECF 222. Mr. Gaines did not propose a new schedule, but simply asked to "suspend" the existing schedule. *Id.* This Court granted Mr. Gaines's motion and removed the scheduled dates from the calendar, asking for a status report in roughly thirty days. ECF 224. Several status reports ensued. ECF 240, 244, 248. On June 16, 2023, and July 19, 2023, the status reports noted that "the government still anticipates an additional charge in the future due to an ongoing investigation." ECF 240.

Several additional months went by, with some defendants opting to plead guilty. On September 14, 2023, a federal grand jury returned a third superseding indictment in the case. ECF 273. The third superseding indictment added one new defendant. *Id.* While the third superseding

---

[2] From this point, all Speedy Trial Act exclusion orders noted that Mr. Gaines did not consent. Per this Court's evaluation below, because the filing of the third superseding indictment triggered a new speedy trial clock, this Court need not address the adequacy of the prior exclusions.

3

indictment did not technically add any new counts, it substantially altered Count One—conspiracy to distribute controlled substances—by adding a list of overt acts to include murder and witness tampering involving Mr. Gaines. *Id.* Count One also added drug quantities attributable to each named defendant. *Id.* As to Mr. Gaines specifically, the addition of drug quantities in the third superseding indictment increased his maximum penalty from twenty years of imprisonment to life in prison, with a mandatory minimum sentence of ten years.

At the time the third superseding indictment was filed, this Court had excluded time pursuant to the Speedy Trial Act through September 18, 2023. ECF 261. Nevertheless, the Government did not file a new consent motion to exclude time until October 17, 2023. ECF 303. At that point, the Government requested retroactive exclusion of twenty-nine days plus exclusion of just one additional day, through October 18, 2023. *Id.*

Shortly thereafter, in light of issues raised by Mr. Gaines, this Court referred him to a magistrate judge for an attorney inquiry hearing. ECF 301. At a hearing on October 30, 2023, the magistrate judge found it appropriate to appoint new counsel for Mr. Gaines. ECF 310. Accordingly, on November 2, 2023, counsel then representing Mr. Gaines filed a motion to withdraw their appearance. ECF 315. This Court granted the motion and appointed new counsel for Mr. Gaines. ECF 317, 323.

Less than one week after the change of counsel, on November 6, 2023, this Court held a scheduling call to set a trial date and other dates in the case. ECF 330. Given the complexity of the case, the voluminous discovery, the fact that Mr. Gaines's counsel had just been appointed and had not yet even entered an appearance, and the need to coordinate the availability of seven criminal defense attorneys for a lengthy, four-week conspiracy trial, this Court scheduled the trial

4

for September 3, 2024, the earliest possible date.[3] This Court granted a Government motion to exclude time pursuant to the Speedy Trial Act, citing the ends of justice exclusion, from October 18, 2023, until the trial date of September 3, 2024. ECF 329. That motion, however, was not filed until November 9, 2023, making twenty-one days of the request retroactive. ECF 322.

On February 21, 2024, counsel for Mr. Gaines filed the instant motion to dismiss.

## II. ANALYSIS

### A. Speedy Trial Act

The Speedy Trial Act provides, in relevant part, "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days . . . from the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c)(1). In reality, however, there are a number of exclusions set forth in 18 U.S.C. § 3161(h), such that few cases actually progress to trial within a seventy-day window. Relevant to this case, 18 U.S.C. § 3161(h)(7)(A) allows for the exclusion of:

> any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

The Speedy Trial Act leaves this Court no discretion as to whether criminal charges can proceed if its dictates have been violated: "If a defendant is not brought to trial within the time limit required

---

[3] Two additional defendants entered guilty pleas between the time trial was scheduled and today.

by section 3161(c) as extended by section 3161(h), the information or indictment **shall be dismissed** on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added).

The threshold question is to determine whether the seventy-day limit in the Speedy Trial Act was violated. In this case, the question has two parts: when did the clock start running and what exclusions are proper from that point?

The question of when the speedy trial clock started running turns on the effect of the third superseding indictment. Neither the Supreme Court nor the Fourth Circuit has expressly addressed in a published opinion whether the return of a superseding indictment triggers a new speedy trial clock. But the Fourth Circuit has suggested, in two unpublished opinions, that a new clock is triggered by a superseding indictment. *See United States v. Dixon*, 542 F. App'x 273, 278 (4th Cir. 2013) ("The filing of the superseding indictment in this case restarted the [Speedy Trial Act] trial clock."); *United States v. Lesczynski*, 86 F. App'x 551, 554 (4th Cir. 2004) (noting that the defendant "concedes . . . that the literal requirements of the Speedy Trial Act were met because a superseding indictment that adds either a new defendant or new charges restarts the speedy trial clock"). That analysis accords with the fact that "dismissal without prejudice" is a recognized remedy for a Speedy Trial Act violation. The Supreme Court has expressly contemplated that a defendant whose case is dismissed without prejudice for a Speedy Trial Act violation can be recharged if the statute of limitations has not expired. *See United States v. Taylor*, 487 U.S. 326, 342 (1988). If the seventy-day speedy trial clock did not run anew once the new indictment is returned, refiling the charges would be pointless.

Importantly, the third superseding indictment added a new defendant and also added drug quantities and overt acts, including, but not limited to, murder. These new elements changed the fundamental nature of the previously charged conspiracy and significantly increased the maximum

penalties faced by Mr. Gaines. Given these significant changes, this Court finds that the Speedy Trial Act clock restarted when the grand jury returned the third superseding indictment on September 14, 2023.

This Court must next consider what time has been validly excluded from the Speedy Trial Act calculations since that date.[4] On August 30, 2023, this Court granted an ends-of-justice exclusion of time until September 18, 2023. ECF 261. On October 17, 2023, this Court granted an ends-of-justice exclusion of time between September 18, 2023, and October 18, 2023. ECF 304. Accepting Mr. Gaines's argument that the retroactive portion of that exclusion was invalid,[5] twenty-nine days would be added to the Speedy Trial Act clock. On November 9, 2023, the Government filed another speedy trial exclusion motion, which tolled the Speedy Trial Act clock under 18 U.S.C. § 3161(h)(1)(D). ECF 322. This Court granted that motion on November 21, 2023, excluding time from October 18, 2023, through the first day of the scheduled trial, September 3, 2024. ECF 328. Once again, even assuming that the retroactive portion of that exclusion was invalid, only twenty-one additional days, from October 18, 2023, to November 9, 2023, would be added to the tally. The Speedy Trial Act clock total, therefore, would stand at just

---

[4] This Court makes these calculations conservatively in favor of Mr. Gaines. Technically, Mr. Gaines has not yet had a formal "initial appearance" on the third superseding indictment, though he did appear in court for an attorney inquiry hearing and a motions hearing after that indictment was returned. This Court is calculating the Speedy Trial Act clock as if it runs from the return of the indictment and not from his first post-indictment court appearance on October 30, 2023.

[5] The Government contends that the retroactive portion of the exclusion was permissible because the Court excluded the time before the expiration of the Speedy Trial Act window. In other words, the Court's ruling was not entirely *nunc pro tunc* and then, the Government posits, is not subject to the *Hart* ruling. *See United States v. Hart*, 91 F.4th 732, 740 (4th Cir. 2024). This Court need not reach that issue because even assuming Mr. Gaines is correct about the retroactive portions, there is no Speedy Trial Act violation.

fifty days, and the trial would commence within the allotted seventy-day window when excluded time is removed from the calculus.

Thus, there has been no violation of the Speedy Trial Act. To the extent that Mr. Gaines contends that any of the 2023 ends-of-justice exclusions were unwarranted, this Court disagrees. Once the third superseding indictment was filed, counsel required additional time to review discovery associated with the new elements of the charges, including the murder, and the new defendant needed to obtain counsel who had to review all of the discovery in the case from its inception. Mr. Gaines then sought replacement counsel in November, 2023, which required additional time. Once counsel was appointed, the trial was promptly set for the earliest possible date to accommodate the schedules of seven defense attorneys. Ends-of-justice exclusions were amply warranted in this context to allow all counsel sufficient time to prepare for trial in this complex conspiracy case.

**B. Dismissal With or Without Prejudice in the Event of a Speedy Trial Act Violation**

Even if this Court had concluded that a Speedy Trial Act violation had occurred, it would have dismissed the charges without prejudice, weighing the relevant statutory factors and the factor of prejudice as follows:

    **a. Seriousness of the Offense**

The first factor Congress requires the Court to consider in deciding whether to dismiss with or without prejudice is the seriousness of the offenses charged. 18 U.S.C. § 3162(a)(1). This case presents extremely serious charges: Mr. Gaines is charged with leading a violent drug conspiracy. The conspiracy, under Mr. Gaines's direction, is alleged to have trafficked large quantities of cocaine and cocaine base and is alleged to have committed acts of violence up to and including

murder, posing a grave danger to the community. There can be no doubt that the seriousness of these offenses weighs in favor of dismissal without prejudice.

### b. Facts and Circumstances Which Led to Dismissal

The second factor would be more equally balanced between the parties. It is true, here, that the charges (and list of defendants) in this case expanded slowly over time. Such developments are not unusual in a large, complex drug conspiracy investigation. Often, law enforcement agents will use a criminal complaint at the early stages of an investigation to remove certain defendants from the street and to protect the public while they continue investigating, particularly where suspected violence is involved. Witnesses often become more forthcoming when arrests have been made and suspects have been detained. And the Government, in this case, repeatedly advised the Court and the defendants that it was continuing its investigation and anticipated that it would bring additional charges. That said, the case and the investigation took a long time, and the reality is that Mr. Gaines will have been detained for almost two-and-a-half years by the time his trial concludes. Occasionally, during that period, the Government was less than diligent in its timely filing of speedy trial exclusion motions, leaving this Court to meander through these questions of exclusion validity and retroactivity instead of reviewing a clean record.

However, Mr. Gaines contributed to the delayed trial date twice: when his counsel asked to suspend the schedule set by this Court in early 2023 and when he asked for new counsel to be appointed. This Court shares defense counsel's frustration with the lack of adequate federal pretrial detention facilities in Maryland, leading to the housing of many pretrial detainees in out-of-state facilities. And the Court acknowledges the practical difficulties an attorney faces when having to travel to Ohio for client visits, especially in cases involving extensive wiretap discovery. But the defense must also acknowledge the practical difficulties the U.S. Marshal for the District of

9

Maryland faces to obtain adequate bedspace to house federal pretrial detainees, particularly in cases involving a need to separate one co-defendant from another to ensure safety. This is not a situation where anyone wanted to move Mr. Gaines to Ohio. Congress simply has not provided this jurisdiction with a better option, and the U.S. Marshal's Service must contract for bedspace with other facilities wherever it can. The Court and the prosecutors and defense attorneys that work in the District of Maryland must operate within the constructs afforded by Congress while attempting to comply with the dictates Congress set in the Speedy Trial Act. In light of the lack of any viable alternatives, this Court does not deem the housing of Mr. Gaines in Ohio to constitute governmental delay. It is simply an unfortunate reality that adds a degree of complexity to the already complex task of trial preparation for a multi-defendant conspiracy.

Ultimately, this Court concludes that the facts and circumstances which would have led to dismissal (had a Speedy Trial Act violation been found) are simply the practical realities of a many-defendant, complex conspiracy case in a jurisdiction lacking enough federal pretrial detention facilities. This Court would weigh this factor as neutral.

### c. Impact of Reprosecution on the Administration of the Speedy Trial Act and of Justice

The third statutory factor is perhaps the least clear to analyze. While it might appear that in every case in which the Government violates the Speedy Trial Act, the Court would want to deter future transgressions by dismissing the charges with prejudice, the Supreme Court has urged a more nuanced approach:

> It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays. Nonetheless, the Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the

10

> Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely. If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

*United States v. Taylor*, 487 U.S. 326, 342 (1988). The Fourth Circuit, in fact, has explained that dismissal without prejudice is appropriate where "there is no evidence that a delay in the trial date was for the government to obtain a tactical advantage, that the delay was purposeful or that the [defendant] was prejudiced by the delay." *United States v. Jones*, 887 F.2d 492, 495 (4th Cir. 1989).

The factors elucidated in *Jones* are present in this case. There is no evidence that the Government delayed this trial to obtain a tactical advantage. In fact, there was an earlier schedule in this case to proceed through a motions hearing that was vacated at the request of Mr. Gaines's counsel because it proved too ambitious. The simple fact is that this is an extremely complex conspiracy case with a lot of moving parts. Wiretap discovery is always complicated and requires extensive meetings between counsel and clients. And in this case, like in many other conspiracy cases, new witnesses came forward, the Government developed new evidence, and the case evolved, leading to new charges and new defendants.

This Court takes Mr. Gaines's point that allowing the Government to escape the dictates of the Speedy Trial Act simply by filing a superseding indictment to add some minor new charge would be a recipe for abuse. This Court and its counterparts, however, are capable of ferreting out, in their speedy trial analyses, whether the Government is employing such tactics to delay trial or buy time. And there is no evidence here of any such abuse. Each iteration of the indictment in this case occurred for a legitimate purpose and changed the case in a meaningful way. There has also been no evidence, for example, that the Government delayed its investigation or its presentation

11

of new charges to the grand jury in an intentional manner. When it had sufficient evidence to bring a superseding indictment incorporating the murder and the increased drug quantities, it did so.

Ultimately, then, in this case, the impact of reprosecution on the Speedy Trial Act and on the administration of justice would be minimal. The trial would still go forward less than one year from the return of the third superseding indictment and the Government engaged in no intentional delay requiring deterrence. Accordingly, this Court finds the factor of "impact of reprosecution on the Speedy Trial Act and the administration of justice" also weighs in favor of the Government and dismissal without prejudice.

### d. Prejudice to the Defendants

Lastly, this Court assesses whether Mr. Gaines has been prejudiced by this delay. In the related context of a constitutional speedy trial analysis (which will occur below), the Supreme Court has identified three defense interests bearing on the question of whether a defendant has suffered prejudice: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the . . . defense will be impaired." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (quoting *Barker v. Wingo*, 407 U.S. 514 (1972)). The first two of these three defense interests are present. Mr. Gaines has been subjected to oppressive pretrial incarceration and has been detained out of state for a significant period of time, which has exacerbated the anxiety and concern he has experienced about the pending case. However, the third, and most important, prejudice factor is absent—Mr. Gaines has not shown any detrimental effect on his ability to present his defense. *See Barker*, 407 U.S. at 532 ("Of these [three factors], the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."). Elements of the prejudice analysis therefore weigh in favor of both Mr. Gaines and the Government.

In sum, had this Court found a Speedy Trial Act violation, it would have balanced the three statutory factors that determine whether a speedy trial dismissal should be with or without prejudice, plus the additional important factor of prejudice to Mr. Gaines, in the Government's favor. The seriousness of the charges weighs heavily in the Government's favor, the facts and circumstances leading to dismissal are neutral, the impact of reprosecution weighs in the Government's favor, and the prejudice factor weighs in both parties' favor, with the most significant component weighing in the Government's favor. On balance, then, this Court would have dismissed the charges without prejudice, permitting them to be refiled before the September, 2024 trial date.

### C. Constitutional Speedy Trial Violation

Even where the dictates of the Speedy Trial Act have not been violated, a defendant can still establish that the Government has deprived him of his Sixth Amendment right to a speedy trial. To make such a showing, the defendant must "show that on balance, four separate factors weigh in his favor." *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). The Supreme Court set forth the four factors in *Barker*: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. To prevail on a constitutional speedy trial claim, the defendant is "obliged, under *Barker*, to establish 'that on balance, [the] four separate factors weigh in his favor.'" *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (alteration in original) (quoting *Thomas*, 55 F.3d at 148).

The first *Barker* factor also serves as a screening mechanism. A delay exceeding one year is considered "presumptively prejudicial" and "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 & n.1. Under that standard, the overall length of pretrial delay here well suffices to trigger a constitutional

inquiry. This Court notes, however, that it would not characterize this delay as "uncommonly long" in the context of a complex drug conspiracy prosecution involving extensive wiretap discovery, several additions of defendants, and replacement of counsel while the case was pending. *Id.* at 651. Nevertheless, the factor weighs slightly in favor of Mr. Gaines.

Turning to the remaining *Barker* factors, the next factor is the reasons for the delay. In analyzing this factor, this Court must label the reasons for the delay as valid, improper, or neutral. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998). The reasons for the delay in this case include:

> * **The need to produce and allow time for review of extensive wiretap discovery**. This Court weighs this reason as neutral. It appears that the Government could have produced discovery more expeditiously to defense counsel, but it is uncontroverted that the review of discovery by the defense in wiretap cases is exceedingly time consuming.
>
> * **The Government's addition of related charges and new defendants**. This Court weighs this reason as valid. The Government disclosed to the defense early on, and repeatedly in its many status reports, that its investigation continued and that new charges and defendants were likely. Certainly, the Government is permitted to continue its investigation after a defendant has been charged. While it is not clear that the progress of a case can or should be delayed solely to accommodate an ongoing investigation, in this case, it was not. Despite the Government's representations about its continued investigation, this Court set a schedule for motions practice in the spring and summer of 2023. That schedule would have pushed this case towards disposition earlier if it were not for the defense request to suspend it.
>
> * **The defense request to suspend the motions schedule to allow more fulsome review of evidence** is a valid reason for delay.
>
> * **Mr. Gaines's request for new counsel**, which was approved by the U.S. Magistrate Judge, is another valid reason for delay. The substitution occasioned more extensive delay to allow new counsel to become familiar with the record, to review the evidence with his client, to file pretrial motions, and to prepare for the motions hearing and trial.
>
> * **The need to schedule a lengthy, four-week trial around the schedules of seven defense attorneys** is also a valid reason for delay, and is responsible for most of the delay between November, 2023 and September, 2024. Attorneys who accept

Criminal Justice Act appointments often have busy rosters of clients and court dates booked with multiple judges, and the need to find a mutually acceptable month-long window on seven trial calendars requires some significant lead time.

Because the reasons for the delay were either valid or neutral, this factor weighs heavily in favor of the Government and against finding a constitutional speedy trial violation. *See Grimmond*, 137 F.3d at 828 ("Valid reasons for delaying a trial are weighted in favor of the Government.").

The third factor, the defendant's assertion of his speedy trial rights, weighs in favor of Mr. Gaines. Since November of 2022, Mr. Gaines consistently asserted his speedy trial rights every time the issue arose.

The final factor, prejudice to the defendant, also weighs slightly in favor of the Government and a finding of no constitutional violation. As noted above, Mr. Gaines has been detained pretrial and suffered additional anxiety as a result of out-of-state detention. However, Mr. Gaines has not shown that he has been hampered in his ability to defend himself as a result of the delay, which is the most important element in assessing prejudice.

While this is a close case, balancing all of these *Barker* factors and the relative weights assigned to each, this Court finds no constitutional violation in this case, placing the heaviest weight on the reasons for the delay, which are overwhelmingly valid and weigh in the Government's favor. This Court notes that some of the reasons weighing in favor of Mr. Gaines are counterbalanced by his own actions that further delayed the final disposition of this case, despite his continued insistence that he wanted a speedy trial.

### III.   CONCLUSION

For the reasons stated above, this Court finds no violation of the Speedy Trial Act or Mr. Gaines's Sixth Amendment right to a speedy trial. A separate order will issue denying Mr. Gaines's motion to dismiss.

Dated: June 28, 2024

                                                  /s/
                                      Stephanie A. Gallagher
                                      United States District Judge