IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> RODNEY GAINES et al., <br><br> Defendants | CRIM. NO. SAG-22-00125 |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### *FARETTA*-RELATED MOTION FOR A CONTINUANCE

The United States of America, by counsel, hereby responds as directed to the portion of the Defendant's *Faretta* motion (ECF 495) seeking a continuance due to discovery.[1]

There is no basis for a continuance in this case on the grounds of discovery issues. The government has complied with and exceeded its discovery obligations in this case. The Defendant's request for a continuance is *not* driven by any valid complaints about discovery, which has included extensive witness discovery materials disclosed to counsel well in advance of the timeframes required by the law. Rather, the Defendant's request for a continuance is driven by his last-minute request to represent himself.

**DISCOVERY SUPPLEMENTS MENTIONED IN THE DEFENSE MOTION**

The *Faretta* motion mentions several discovery productions.[2] The government will

---

1   The government does not discuss the law of *Faretta* herein and instead focuses on the issue of discovery and whether the state of discovery in this case justifies a continuance.

2   At the outset the government notes that it does not appear that the defense is requesting a continuance separately from the Defendant's own request to proceed *pro* se. That is, the Defendant is requesting a continuance, but only on the grounds that his decision to proceed *pro* se requires him to take more time to prepare. Accordingly, this is not a situation (if the government reads the motion correctly) in which defense counsel is requesting a continuance in order to allow *counsel* necessary time to prepare.

1

address them in turn:

**<u>Witness Disclosures</u>**

The defense motion references the witness disclosure information provided to the defense as of August 19, 2024. It appears that the government's "[e]xtensive Jencks materials on over 20 witnesses" (ECF 495 at ¶ 3.b) is a substantial part of the reason for Gaines's request for a continuance. To be clear, and as the defense motion alludes, this was the day that the parties agreed to and that defense counsel were authorized to discuss and show witness information to their clients and was also the day on which the defense received potential impeachment related information. In fact, the government had begun making witness disclosure information available to defense counsel, on an attorney's-eyes-only basis, several weeks earlier, on the following schedule:

- The government made witness statements and reports available for an attorney's eyes-only review at the U.S. Attorney's Office beginning July 12, 2024 (counsel for Gaines did conduct a review of those materials).

- The government provided to defense counsel the preliminary witness information (again, statements, reports of interviews, etc.), also on an attorney's eyes-only

---

The fact that discovery is continuing or being supplemented does not equate with discovery being "late." Discovery is a continuing obligation. *See* Fed. R. Crim. P. 16(c). In this case the government has endeavored to push out discovery as completely and as thoroughly as possible. Some of the recently disclosed discovery is simply new information that has come into existence (such as reports concerning witness preparation sessions) or material that was simply not subject to disclosure earlier than it was sent. Some of it has been material, such as agent or witness notes, that the government received during the course of preparation for trial. Finally, some of the information has been material that the government has disclosed after double checking to make sure items have been sent in discovery and to ensure that discovery is complete.

basis, on August 2, 2024 (about a month before trial).

- Finally, the government agreed to provide impeachment-type information and also to permit defense counsel to begin showing discovery materials to their clients on August 19, 2024. As alluded to in the defense motion, that has been done.

In sum, the government's disclosure of witness information to the defense has been substantial, timely, and in excess of what the law and District practice requires. Gaines has received witness information in this case well in advance of the date on which he might have expected to receive such information and with ample time to use it to prepare for trial. He is not entitled to a continuance.

**Other Supplemental Productions**

The defense motion also discusses the following recent supplemental productions:

- The government disclosed discovery during December 2023 (as the defense motion indicates) that was inadvertently sent to Rodney Gaines's former counsel. Current counsel for Gaines identified the issue on July 15, 2024 and the government arranged to send the discovery to current counsel (which apparently was completed by July 22, 2024 as the motion indicates). The *Faretta* motion refers to alleged exculpatory information that was contained in that production. Assuming there was anything exculpatory in that production,[3] the motion does not indicate that the disclosure, even accounting for the initial erroneous dispatch to former counsel,

---

[3] Subsequent to July 22, counsel for Gaines did email the government inquiring as to a particular report that had been sent in discovery and requesting additional information, which the government provided within a day. The government assumes that is the exculpatory component alluded to in counsel's *Faretta* motion but could be mistaken.

3

was made too late for the defense to make effective use of the information at trial or that any prejudice has occurred.

- On August 1, 2024, the government sent a supplemental disclosure comprised primarily of FBI materials along with some other law enforcement agency materials. This disclosure was made following undersigned counsel's review of FBI materials (including reports and administrative materials) and an attempt to make sure that anything potentially discoverable was disclosed. This was a substantial disclosure in terms of its length; however, at least a fair portion of the disclosure was comprised of materials that were somewhat administrative in nature or that were duplicative (in substance if not in form) with items previously sent in discovery. The government sent this discovery with a detailed index.

- On August 2, 2024, the government provided searchable line sheets for the wiretaps. This was sent in response to a request from counsel for Ms. Hatchett who had requested the materials to make it easier to review wiretap materials. Though only Ms. Hatchet's counsel requested this information, the line sheets were sent to all counsel. And to be clear, the wiretaps had been previously disclosed months before this date.

- On August 8, 2024, the government provided discovery including (probably among other things): agent handwritten notes corresponding to a previously produced FBI 302 reports (FBI serial 109, 134, 183); handwritten notes from an MSP trooper who had participated in the investigation of the King homicide and in some aspects of the proactive Gaines investigation; FBI administrative forfeiture papers pertaining

4

to firearms that were forfeited in connection with a co-defendant's sentencing and to the sending of an administrative forfeiture notice to Self Storage Plus on April 24, 2024; FBI 302 reports pertaining to the guilty pleas defendants on May 6, 2024 and July 26, 2024; a copy of a criminal investigative agreement between the Maryland State Police and the Westminster Police Department (this was sent out of caution because it has impacted on the decision of Westminster Police to defer the investigation of the King homicide to MSP); a copy of a log of jail phone calls provided to the government by WPD (the log contains notes of some of the jail call communications; it is not material the government is using in its case); a copy of a Westminster Police call dispatch report from the day of the King murder); and a copy of an FBI "manifest" document that contains a listing of all FBI materials in the case (certain materials were redacted).

- On August 9, 2024, the government provided internal affairs records for law enforcement officers to the defense.  That material was sent pursuant to a protective order.

- On August 14, 2024, the government sent expert witness disclosures concerning drug chemists and firearms operability.  The government had proposed stipulations concerning those items previously but because the defense had not had a chance to respond as to whether stipulations could be done, the government sent the disclosures out of caution.   The government and defense counsel continued to discuss the possibility of stipulations on those items prior to the pretrial conference on August 20, 2024, and at that time stipulations seemed likely (although the

government does not know if that is still the case in light of the *Faretta* request).

- On August 19, 2024, per the above-discussed timeline, the government disclosed background and possible *Giglio*-related[4] material to defense counsel concerning its witnesses (the disclosure also included some supplemental statements-related material). Thus, the August 19 disclosure was consistent with the previously discussed timeline.

- The August 19 disclosure included crime scene photos for the Kevin King murder that had been received from the Maryland State Police.

- On August 20, 2024, the government sent a report concerning an interview of a witness that corresponded to a photo array for the same witness that had previously been disclosed. One of the defense counsel inquired as to whether there was a corresponding report (the inquiry may have occurred on August 20 as well) and the government inquired with the investigators who checked and provided the report. The report referenced a recorded statement by the witness which the government also acquired and sent in discovery on August 21 (along with the IAD information mentioned below).

- On August 21, 2024 (yesterday), the government sent additional/updated internal affairs information for some of the law enforcement witnesses, including two individuals who are not going to be called as witness. The disclosure did include information concerning a new IAD matter filed as to one of the individuals not

---

4    Of course the government does not concede that all of the information disclosed on August 19, 2024 would constitute discoverable material under *Giglio v. United States*, 405 U.S. 150 (1972) or admissible impeachment material.

being called as a witness (government counsel learned about the new IAD matter yesterday and provided information about it to defense counsel on the same day. The IAD matter is pending).

## ANALYSIS

A district court has broad discretion in whether to grant or deny a motion for a continuance. *See United States v. Lawrence*, 161 F.3d 250, 254 (4th Cir. 1998). The Fourth Circuit has found that a trial court acted within its discretion in denying a request for a continuance where a defendant was able to make substantial use of information at trial, even if the information was allegedly disclosed late. *See, e.g., United States v Williams*, 445 F.3d 724, 739 (4th Cir. 2006) (no abuse of discretion in denial of continuance where the defendant was able to effectively make use allegedly late disclosed psychological information about witness).

With respect to the timing of exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Manglitz*, 939 F.Supp.1211, 1220 (D. Md. 1996) (quoting *United States v. Smith Grading and Paving, Inc.,* 760 F.2d 527, 532 (4th Cir. 1985)).

In this case, if the Defendant elects to proceed *pro se*, he will do so in a situation in which his former defense counsel has received a great volume of discovery with sufficient time to prepare for a defense. To the extent that the Defendant's ability to prepare a *pro se* defense is limited at all, that will be a result of his own last-minute decision to proceed *pro se*, <u>not</u> due to any defects from the timing of discovery. In particular, the government notes the following:

First, Gaines cannot assert any valid complaint with respect to information concerning the

witnesses.  Under the law, the Defendant was not entitled to *any* witness disclosure information prior to trial and he was not entitled to witness statements and the like until the witnesses actually testified, per the Jencks Act (18 U.S.C. § 3500).  Nonetheless, the government provided witness disclosure information far earlier than the law required and far earlier than even District practice required.[5]  The Defendant cannot establish that there is anything wrong about that timing or that he lacks adequate time to prepare.

Second, the government believes that its discovery has been provided far enough in advance for defense counsel to make use of that discovery in its preparation for trial.  The Defendant is not entitled to a continuance where he himself simply creates the issue by electing to proceed to trial in a *pro se* manner, thereby depriving himself of competent counsel who knows the record, argued the motions in this case, and has had a lengthier period of time to prepare.  Indeed, defense counsel has had access to the witness discovery for several weeks, and Gaines's decision to discharge counsel at this late hour is an unnecessary and damaging decision that Gaines is inflicting on himself.  Any harm to Gaines's trial preparation will be the result of his own decision, not any issues with timing of discovery.

Third, the government has attempted to supplement discovery reasonably promptly when additional information has been discovered or has come to light.  It is expected and required that discovery be a continuing obligation, *see* Fed. R. Crim. P. 16(c), and the government is making great efforts to comply with that obligation.

Supplementation of discovery – either because new materials came into existence or because materials are identified - is inevitable in a large case like this (and perhaps in any case).

---

[5]  To be clear, the government has supplemented its witness disclosures as discussed herein.

witnesses.  Under the law, the Defendant was not entitled to *any* witness disclosure information prior to trial and he was not entitled to witness statements and the like until the witnesses actually testified, per the Jencks Act (18 U.S.C. § 3500).  Nonetheless, the government provided witness disclosure information far earlier than the law required and far earlier than even District practice required.[5]  The Defendant cannot establish that there is anything wrong about that timing or that he lacks adequate time to prepare.

Second, the government believes that its discovery has been provided far enough in advance for defense counsel to make use of that discovery in its preparation for trial.  The Defendant is not entitled to a continuance where he himself simply creates the issue by electing to proceed to trial in a *pro se* manner, thereby depriving himself of competent counsel who knows the record, argued the motions in this case, and has had a lengthier period of time to prepare.  Indeed, defense counsel has had access to the witness discovery for several weeks, and Gaines's decision to discharge counsel at this late hour is an unnecessary and damaging decision that Gaines is inflicting on himself.  Any harm to Gaines's trial preparation will be the result of his own decision, not any issues with timing of discovery.

Third, the government has attempted to supplement discovery reasonably promptly when additional information has been discovered or has come to light.  It is expected and required that discovery be a continuing obligation, *see* Fed. R. Crim. P. 16(c), and the government is making great efforts to comply with that obligation.

Supplementation of discovery – either because new materials came into existence or because materials are identified - is inevitable in a large case like this (and perhaps in any case).

---

[5]  To be clear, the government has supplemented its witness disclosures as discussed herein.

When the government speaks to a witness and receives additional information or evidence supplementation will predictably occur and has occurred in this instance. And each time that it has occurred, the government dutifully provided the necessary disclosures. That may come in the form of handwritten notes the witness has; or a video on the witness's cell phone; or a report that the witness wrote that was not known to the government; or other materials. The government may make disclosures concerning a particular statement made by a witness during a particular preparation session, which obviously cannot be subject to disclosure before the statement actually takes place. The government anticipates that such supplementation will occur.[6]

Finally, the government has attempted to be open and collaborative with defense counsel on discovery matters. The government has tried to keep counsel informed of what discovery packets contain and whether additional discovery is expected. The government has attempted to respond reasonably promptly to discovery inquiries from counsel. This, again, is a reason why the Defendant's decision to proceed *pro se*, if he makes that decision, should not trigger a continuance on the basis of any discovery issues.

The government wishes to be clear that it does anticipate that discovery will continue to be supplemented. Witnesses will be prepared and may make discoverable statements (or simply statements that the government thinks it prudent to disclose whether discoverable or not). Emails and electronic communications with witnesses must be reviewed (much of which may be of limited

---

[6]  One example is emails. The case investigators have provided emails to the government (including one batch received today). The government will review that material as swiftly as it can. Much of the emails may be trivial or logistical matters; some may be drafts or enclosures of previously produced material; some of it may be duplicative with previously provided information; some may be otherwise non-substantive. Anything subject to disclosure will be sent as quickly as the government can review it.

interest to the defense quite frankly). The government may find additional items that warrant disclosure out of prudence even if not actually discoverable. The government will be as thorough and as prompt as possible and is cognizant of its continuing duty to disclose as needed and as required.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that the motion for a continuance be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:_____/S/_____
LaRai N. Everett
Michael C. Hanlon
Assistant United States Attorneys

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4895
Michael.hanlon@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22d day of August 2024, a copy of the foregoing response was sent by CM/ECF to all counsel of record.

_____/s/_____
Michael C. Hanlon
Assistant United States Attorney