IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * Criminal Case No.: SAG-22-0125 |
| RODNEY GAINES, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this complex narcotics conspiracy case, Defendant Rodney Gaines has been held in pretrial detention since April 8, 2022. This Court adjudicated Mr. Gaines's motion seeking dismissal on speedy trial grounds in June, 2024, and determined at that time that his motion should be denied. As a result of intervening events in the last five months, Mr. Gaines has filed two additional motions: (1) a Renewed Motion to Dismiss for Violation of Speedy Trial, ECF 579; and (2) a Motion to Dismiss for Destruction of Brady Evidence, ECF 578. This Court has considered the Government's consolidated opposition, ECF 585, and Mr. Gaines's consolidated reply, ECF 591. This Court also heard argument on this motion on November 19, 2024. For the reasons stated below, despite this Court's grave concern over the Government's handling of discovery in this case, this Court does not conclude that Mr. Gaines's constitutional or statutory speedy trial rights have been violated, and this Court finds no *Brady* or due process violation. Instead, this Court can implement measures short of dismissal to eliminate any prejudice to Mr. Gaines from unavailable text message evidence.

I.   PROCEDURAL HISTORY AND RELEVANT FACTS

This Court will provide the summary of the case's extensive procedural history from its June, 2024 opinion, adding the more recent developments at the conclusion:

> On April 6, 2022, a federal grand jury returned an indictment charging Mr. Gaines and four co-defendants with various drug and gun offenses. ECF 18. Mr. Gaines was specifically charged with conspiracy to distribute controlled substances, conspiracy to possess firearms in furtherance of drug trafficking, and possession with intent to distribute controlled substances. *Id.* Mr. Gaines first appeared in court on April 8, 2022. ECF 32. At a detention hearing on April 11, 2022, the U.S. Magistrate Judge concluded that Mr. Gaines should be held in pretrial detention as a result of the strength of the evidence against him, his prior criminal history, his prior poor performance on court supervision, and previous incidents in which he had failed to appear in court and had attempted to evade law enforcement. ECF 217.
>
> Over the next several months, the Government located and arrested Mr. Gaines's co-defendants and began producing discovery. All parties consented to exclusions of time pursuant to the Speedy Trial Act, and the prior district judge in this case entered orders determining that the ends of justice warranted such exclusions. ECF 73, 74, 85, 86. On September 7, 2022, a federal grand jury returned a superseding indictment adding five additional co-defendants. ECF 99. The superseding indictment added one new substantive count against Mr. Gaines for possession with intent to distribute controlled substances. *Id.*
>
> Once again, the Government began arresting the newly added co-defendants and all parties agreed to another exclusion of time pursuant to the Speedy Trial Act. ECF 112. In a status report dated November 3, 2022, the Government stated that it "anticipates an additional indictment for at least two individuals and possibly more in the future due to an ongoing investigation." ECF 161. That November, 2022 status report stated, for the first time, that Mr. Gaines no longer consents to waive his Speedy Trial Act rights.[1] *Id.* On November 9, 2022, a federal grand jury returned a second superseding indictment, this time adding an additional two defendants but not altering the charges against Mr. Gaines. ECF 166.
>
> On January 20, 2023, once the two new defendants obtained counsel, this Court held a conference call to set a schedule in the case. ECF 210. The parties agreed that the Government would produce all discovery by February 10, 2023, the defendants would file their motions by April 7, 2023, and a motions hearing would be held on August 15, 2023, after briefing had been completed. *Id.* But on March 30, 2023, counsel for Mr. Gaines filed a "Motion to Suspend Current Motions Briefing Schedule and Hearing," citing an inability to adequately prepare for the

---

[1] From this point, all Speedy Trial Act exclusion orders noted that Mr. Gaines did not consent.

2

hearing and file motions because the U.S. Marshals Service moved Mr. Gaines to a pretrial detention facility in Youngstown, Ohio. ECF 222. Mr. Gaines did not propose a new schedule, but simply asked to "suspend" the existing schedule. *Id.* This Court granted Mr. Gaines's motion and removed the scheduled dates from the calendar, asking for a status report in roughly thirty days. ECF 224. Several status reports ensued. ECF 240, 244, 248. On June 16, 2023, and July 19, 2023, the status reports noted that "the government still anticipates an additional charge in the future due to an ongoing investigation." ECF 240.

Several additional months went by, with some defendants opting to plead guilty. On September 14, 2023, a federal grand jury returned a third superseding indictment in the case. ECF 273. The third superseding indictment added one new defendant. *Id.* While the third superseding indictment did not technically add any new counts, it substantially altered Count One—conspiracy to distribute controlled substances—by adding a list of overt acts to include murder and witness tampering involving Mr. Gaines. *Id.* Count One also added drug quantities attributable to each named defendant. *Id.* As to Mr. Gaines specifically, the addition of drug quantities in the third superseding indictment increased his maximum penalty from twenty years of imprisonment to life in prison, with a mandatory minimum sentence of ten years.

At the time the third superseding indictment was filed, this Court had excluded time pursuant to the Speedy Trial Act through September 18, 2023. ECF 261. Nevertheless, the Government did not file a new consent motion to exclude time until October 17, 2023. ECF 303. At that point, the Government requested retroactive exclusion of twenty-nine days plus exclusion of just one additional day, through October 18, 2023. *Id.*

Shortly thereafter, in light of issues raised by Mr. Gaines, this Court referred him to a magistrate judge for an attorney inquiry hearing. ECF 301. At a hearing on October 30, 2023, the magistrate judge found it appropriate to appoint new counsel for Mr. Gaines. ECF 310. Accordingly, on November 2, 2023, counsel then representing Mr. Gaines filed a motion to withdraw their appearance. ECF 315. This Court granted the motion and appointed new counsel for Mr. Gaines. ECF 317, 323.

Less than one week after the change of counsel, on November 6, 2023, this Court held a scheduling call to set a trial date and other dates in the case. ECF 330. Given the complexity of the case, the voluminous discovery, the fact that Mr. Gaines's counsel had just been appointed and had not yet even entered an appearance, and the need to coordinate the availability of seven criminal defense attorneys for a lengthy, four-week conspiracy trial, this Court scheduled the trial for September 3, 2024, the earliest possible date. This Court granted a Government motion to exclude time pursuant to the Speedy Trial Act, citing the ends of justice exclusion, from October 18, 2023, until the trial date of September 3, 2024. ECF 329. That

3

motion, however, was not filed until November 9, 2023, making twenty-one days of the request retroactive. ECF 322.

On February 21, 2024, counsel for Mr. Gaines filed the instant motion to dismiss. ECF 439. This Court issued an opinion and order denying Mr. Gaines's speedy trial motion on June 28, 2024. ECF 439, 440. As the summer proceeded, the parties filed motions *in limine* in anticipation of the September 2024 trial. This Court held a pretrial conference on August 20, 2024, in which it ruled on a number of these pretrial motions. In the same general time frame, all of Mr. Gaines's remaining co-defendants opted to plead guilty, leaving Mr. Gaines alone awaiting trial. On August 22, 2024, Mr. Gaines filed a motion seeking to represent himself at trial and seeking a continuance of the trial date. ECF 495. This Court granted his motion for a *Faretta* hearing but denied his request for a continuance. ECF 498. Following the *Faretta* hearing, Mr. Gaines was permitted to represent himself, with his current attorney serving as standby counsel. On August 29, 2024, Mr. Gaines filed a *pro se* motion to exclude or for evidentiary hearing relating to missing *Jencks* material (specifically text messages) involving two cooperating witnesses, J.S. and J.B. ECF 512. The next day, August 30, 2024, the Government sent a status report suggesting that the text messages at issue had been located. ECF 520.

On September 2, 2024, Mr. Gaines filed another *pro se* motion seeking to continue the trial. ECF 522-1. That motion detailed the items of evidence that had been produced to Mr. Gaines since August 23, 2024, and explained that the text messages that the Government had located were in a format that made review exceedingly difficult. *Id.* In response, the Government opposed a continuance but suggested that a reasonable compromise would be to select the jury on September 3, 2024, and then take a couple of days off for Mr. Gaines to review the newly produced evidence before proceeding to opening statement. ECF 524. Ultimately, just before the trial commenced, Mr. Gaines reversed his decision to represent himself and opted to be represented again by counsel.

The parties selected a jury on September 3, 2024, and agreed that opening statements would occur on September 6, 2024. However, on September 5, 2024, the parties instead filed a "Consent Renewed Motion to Continue," which recounted that earlier on that date, the Government produced:

- \*   phone records and agent notes on the alleged murder victim
- \*   police reports documenting evidence transfers
- \*   reports relatively recently generated from witness prep sessions and reverse proffers
- \*   a thumb drive of videos from the scene of the charged homicide, some of which are new and some of which may have been produced before

ECF 538. In addition, the Government had advised Mr. Gaines, at 3:07 PM on September 5, 2024 (two days after the trial had commenced), that it just received 543 emails, totaling more than 24,000 pages, from the email account of its former case agent, then-Task Force Officer ▮▮▮▮.[2] *Id.* The Government had to review that new evidence to isolate text messages from cooperating witnesses and other discoverable material before producing the emails to Mr. Gaines. *Id.*

As a result of the significant quantum of discovery materials produced to Mr. Gaines on September 5, 2024, and the revelation that other discoverable evidence had not yet been produced, this Court granted the parties' consent motion to continue the trial and dismissed the jury that it had selected but not yet sworn. ECF 540, 541. The parties then agreed to a briefing schedule for the instant motions, which are now ripe.

The parties agree that, now that discovery has been completed, there are two categories of evidence that existed at one point but the Government can no longer access and produce from any

---

[2] ▮▮▮▮ is no longer serving as a law enforcement officer because of some significant issues relating to his credibility in other matters. The Government will not call ▮▮▮▮ as a witness at trial, although he did testify at a motions hearing relating to these evidentiary issues. *See* ECF 585-2.

5

source: (1) two videos that had been attached to text exchanges between ▊ and a cooperating witness, A.W.³; and (2) text exchanges between January 21, 2022 and April 13, 2022 between ▊ and another cooperating witness, J.B. ▊ testified, at a motions hearing in this case, that those items were lost when his employer, the Maryland State Police ("MSP"), replaced its employees' cell phones and he failed to take steps sufficient to preserve the videos and the J.B. text messages. He did take steps to preserve the text messages on his old cell phone from A.W. and another cooperating witness. In addition to those text messages preserved from ▊'s phone, Mr. Gaines has been provided with text messages between ▊ and J.B. from December, 2021 through January 21, 2022 (during a period when the text messages were captured via a wiretap of J.B.'s phone), and a handwritten letter J.B. sent to a prosecutor in February, 2023 ("the 2023 Letter"). In the 2023 Letter, J.B. asserts that ▊ and government representatives had promised him that he would not go to jail if he helped them "get" Mr. Gaines. ECF 585-7.

## II. ANALYSIS

### A. Speedy Trial

This Court conducted an analysis of the Speedy Trial Act's seventy-day clock in its June, 2024 speedy trial opinion, and concluded that as of that date, only fifty countable days had elapsed in Mr. Gaines's case. ECF 439 at 7. In that same opinion, this Court made ends of justice findings and excluded time under the Speedy Trial Act until the then-scheduled trial date, September 3, 2024. *Id.* Before that date, Mr. Gaines filed a *pro se* motion, ECF 512, relating to *Jencks* material, which remains pending. *See* 18 U.S.C. § 3161(h)(1)(D) (automatically excluding delays "resulting from…pretrial motion[s] from the filing of the motion through the conclusion of the hearing on,

---

³ The text messages between ▊ and A.W. were preserved and produced but the system used for preservation did not also save the video attachments.

or other prompt disposition of, such motion."); *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011) ("[T]he filing of a pretrial motion falls within this provision regardless of whether it actually causes, or is expected to cause, delay in starting a trial."). Because Mr. Gaines's *Jencks* motion is closely related to the *Brady* motion, this Court will decide it alongside that motion. *Cf. Henderson v. United States*, 476 U.S. 321, 329–30 (1986); *United States v. Riley*, 991 F.2d 120, 125 (4th Cir. 1993). Moreover, this Court has granted the Government's three motions to exclude time under the Speedy Trial Act since September, 2024, finding that the ends of justice were best served by allowing Mr. Gaines to file, and for this Court to consider, motions regarding the Government's discovery failures in this case. As a result, both parties agree that the Speedy Trial Act does not mandate dismissal at this time.[4]

The present dispute, however, revolves around the impact of recent events on Mr. Gaines's constitutional right to a speedy trial. Four factors are relevant to that constitutional right: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). To prevail on a constitutional speedy trial claim, the defendant is "obliged, under *Barker,* to establish 'that on balance, [the] four separate

---

[4] Counsel for Mr. Gaines argued at hearing that this Court should revisit its prior decision to start the Speedy Trial clock at the filing of the Third Superseding Indictment, and resultingly also reconsider its Speedy Trial analysis. This Court sees no reason in the present record to revisit its prior Speedy Trial Act analysis. He also argued that, if the Court did not revisit its prior findings, ECF 512 may not qualify as a pre-trial motion that would automatically result in the exclusion of time under 18 U.S.C. § 3161(h)(1)(D). This Court is unaware of any Supreme Court or Fourth Circuit precedent indicating any degree of discretion or flexibility in excluding time when a motion is pending. Indeed, the express language of the statue compels this Court to exclude "delay resulting from *any* pretrial motion." *Id.* (emphasis added); *cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is 'one or some indiscriminately of whatever kind.'" (citing Webster's Third New Internat'l Dictionary 97 (1976)).This Court, accordingly, finds no reason to conclude that ECF 512 should be treated differently than any other pretrial motion.

factors weigh in his favor.'" *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (alteration in original) (quoting *Thomas*, 55 F.3d at 148).

This Court already ruled in its June 2024 opinion that the first and third *Barker* factors (length of the delay and assertion of the right) weigh in Mr. Gaines's favor. A delay exceeding one year is considered "presumptively prejudicial" and "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 & n.1 (1992). The delay in this case well exceeds the one-year mark and has only been extended since June, 2024. Mr. Gaines has also generally continued to assert his speedy trial rights, despite his occasional efforts, particularly as trial approached, to request a continuance for various reasons. The only continuance that was granted, however, proved necessary to protect Mr. Gaines's due process rights to receive and review relevant discovery. Thus, this Court continues to find those two *Barker* factors weigh in favor of Mr. Gaines.

That leaves two remaining *Barker* factors: the reasons for the delay and prejudice to the defendant. As this Court noted in its June, 2024 opinion, in evaluating the reasons for the delay, it must label each contributing reason as valid, improper, or neutral. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998). In June, this Court found:

The reasons for the delay in this case include:

* **The need to produce and allow time for review of extensive wiretap discovery**. This Court weighs this reason as neutral. It appears that the Government could have produced discovery more expeditiously to defense counsel, but it is uncontroverted that the review of discovery by the defense in wiretap cases is exceedingly time consuming.

* **The Government's addition of related charges and new defendants**. This Court weighs this reason as valid. The Government disclosed to the defense early on, and repeatedly in its many status reports, that its investigation continued and that new charges and defendants were likely. Certainly, the Government is permitted to continue its investigation after a defendant has been charged. While it is not clear that the progress of a case can or should be delayed solely to

accommodate an ongoing investigation, in this case, it was not. Despite the Government's representations about its continued investigation, this Court set a schedule for motions practice in the spring and summer of 2023. That schedule would have pushed this case towards disposition earlier if it were not for the defense request to suspend it.

* **The defense request to suspend the motions schedule to allow more fulsome review of evidence** is a valid reason for delay.

* **Mr. Gaines's request for new counsel**, which was approved by the United States Magistrate Judge, is another valid reason for delay. The substitution occasioned more extensive delay to allow new counsel to become familiar with the record, to review the evidence with his client, to file pretrial motions, and to prepare for the motions hearing and trial.

* **The need to schedule a lengthy, four-week trial around the schedules of seven defense attorneys** is also a valid reason for delay, and is responsible for most of the delay between November, 2023 and September, 2024. Attorneys who accept Criminal Justice Act appointments often have busy rosters of clients and court dates booked with multiple judges, and the need to find a mutually acceptable month-long window on seven trial calendars requires some significant lead time.

ECF 439 at 14–15. This Court concluded in June that "Because the reasons for the delay were either valid or neutral, this factor weighs heavily in favor of the Government and against finding a constitutional speedy trial violation." *Id.* at 15.

Now, of course, there is an additional reason for the delay, **the Government's failure to produce discovery material sufficiently in advance of the trial and its failure to preserve potentially discoverable material, requiring additional motions briefing.** The Court labels this new reason "invalid." The quantum of evidence the Government produced to the defense on the eve of trial (and even days after the jury had been selected) simply made proceeding on the long-scheduled trial date impossible. As Mr. Gaines and the Court had otherwise been ready to proceed to trial on that date, the delay is entirely attributable to the Government and the reason for the delay

was wholly avoidable had the Government properly handled discovery over the years this case was pending.[5]

The recent period of improper delay, however, does not vitiate this Court's evaluation of the pre-June period. The effect of the new invalid period of delay shifts the needle from "heavily in favor of the Government" to just "in favor of the Government." While the Government bears sole responsibility for the delay from September 3, 2024, to today, the entirety of the period from the inception of the case to September 3, 2024, stemmed from either valid or neutral reasons. This Court does not conclude that the new developments, resulting in additional delay of about eleven weeks to date, turn the "reason for delay" factor in Mr. Gaines's favor.

The final factor, prejudice to the defendant, also continues to weigh slightly in favor of the Government and a finding of no constitutional violation. As this Court noted in June, Mr. Gaines experienced oppressive pretrial incarceration and suffered additional anxiety as a result of his out-of-state detention. *See Doggett*, 505 U.S. at 654 (identifying "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the … defense will be impaired" as the possible interests bearing on prejudice) (quoting *Barker v. Wingo*, 407 U.S. 514 (1972)). Mr. Gaines has since been moved to the pretrial detention facility in Maryland, where he presently resides.

---

[5] A new date for Mr. Gaines's trial has not been selected, pending the outcome of these motions. This Court is cognizant of the fact that Mr. Gaines's counsel had reserved September 2024 for the trial in this case and has existing criminal trial obligations in the immediate future. As this Court explained at the motions hearing, it will defer to defense counsel to select counsel's soonest available two-week window, and this Court and the Government will accommodate that date for Mr. Gaines's trial. It may be, then, that some of the delay in this window becomes more of a "neutral" than an "invalid" reason, to the extent it is primarily attributable to defense unavailability. However, in no way does this Court rest any blame for this delay on the shoulders of Mr. Gaines or his counsel.

Mr. Gaines now argues that he has been hampered in his ability to defend himself as a result of the delay, which is the most important element in assessing whether he has been prejudiced. *See Barker*, 407 U.S. at 532 ("Of these [three factors], the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."). Specifically, he contends that the delay has cost him access to the two videos from A.W. and the text messages during a four-month period between ▇ and J.B. This Court cannot conclude, in any non-speculative way, that the missing evidence has hampered Mr. Gaines's ability to defend himself. All of the texts between ▇ and A.W. are preserved, and they do not indicate that the videos would be of any particular import. And the texts between ▇ and J.B. during December 2021 and most of January 2022 have been preserved. Those messages are not particularly substantive and reflect that many of the communications between ▇ and J.B. appear to be by way of calls and in-person meetings. As detailed below, this Court is able to take measures, short of dismissal, to alleviate any adverse effect on Mr. Gaines's defense from the missing text communications. This Court therefore does not conclude that the prejudice factor weighs in Mr. Gaines's favor, and instead it continues to weigh slightly in the Government's favor.

Mr. Gaines also argues that his defense has been hampered by the delay because witness recollections have faded in the several years since the events underlying the indictment took place. Although ▇ testified that he had trouble remembering events that happened years ago, this Court nevertheless cannot conclude that ▇'s faded recollections will diminish Mr. Gaines's ability to defend himself because the Government does not intend to call ▇ at trial. Mr. Gaines has not introduced evidence that any likely trial witness is having difficulty recalling the events of this case, and this Court cannot speculate about whether that memory loss has occurred.

While this remains a close case, balancing all of these *Barker* factors and the relative weights assigned to each, this Court still finds no constitutional speedy trial violation in this case, placing the heaviest weight on the reasons for the delay, which continue to weigh in the Government's favor despite its recent contribution to additional unwarranted delay. This Court thus proceeds to consider Mr. Gaines's *Brady* argument.

### B. MOTION TO DISMISS FOR BRADY VIOLATION

Mr. Gaines argues in the alternative that this Court should dismiss the indictment because evidence produced at the September 19, 2024, evidentiary hearing shows that the government destroyed exculpatory evidence, thus violating Mr. Gaines's due process rights. ECF 578. Specifically, Mr. Gaines relies again on the two missing videos A.W. sent to ▓▓▓ and the text messages between ▓▓▓ and J.B.

Proof of a due process violation based on a failure to preserve evidence requires two elements. First, the defendant must show that the missing evidence had "an exculpatory value that was apparent before the evidence was destroyed[] and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Perry,* 92 F.4th 500, 513 (4th Cir. 2024) (quoting *California v. Trombetta,* 467 U.S. 479, 489 (1984)). Second, the destruction of such exculpatory evidence by the Government only rises to the level of a constitutional violation if the evidence was destroyed in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). And bad faith is only present where the defendant can show that "the officer intentionally withheld the evidence for the purpose of depriving the [defendant] of the use of that evidence during criminal trial." *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000); *United States v. Varner*, 261 F. App'x 510, 517 (4th Cir. 2008) ("[F]or due process concerns to arise…the destroyed evidence must have some exculpatory value that the agents recognized,

and yet nevertheless destroyed."). Negligence does not constitute bad faith. *Elmore v. Osmint*, 661 F.3d 783, 831 (4th Cir. 2011).

Mr. Gaines's efforts to show a due process violation fail at the first step, because he is unable to show an inability to obtain comparable evidence by other reasonably available means. Mr. Gaines is in possession of all of the text exchanges between ▮ and A.W. and there is no evidence that the two missing videos contain content that would be of an exculpatory nature, or even a meaningfully different nature than the preserved exchanges. "[R]ank speculation as to the nature of the allegedly suppressed materials…cannot establish a *Brady* violation." *United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019) (video recordings that were not certain to exist); *United States v. Briscoe*, 101 F.4th 282, 297 (4th Cir. 2024) (security camera footage) ; *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("Because Caro can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be [favorable.]"). The existing text exchanges between ▮ and A.W. are comparable evidence that is available to Mr. Gaines. With respect to the J.B. texts, even if the texts contained the exculpatory content Mr. Gaines suggest that they might (promises made by ▮ that J.B. would not go to jail if he "gets Gaines"), Mr. Gaines has comparable evidence: the 2023 Letter, handwritten from J.B. to the prosecutor, describing those same representations. Of course, Mr. Gaines would like to have even more evidence of that nature, but the handwritten letter itself constitutes compelling impeachment material. As a result of the Government's decision not to use ▮ as a trial witness, it will be unable to establish through the testimony of the other party to the alleged "deal" that ▮ made no such representations to J.B. While the evidence is not identical to having the four months of text messages that possibly might corroborate such conversations, it is clearly "comparable" in its impeachment value.

But even had Mr. Gaines met his burden at the first step, this Court is unpersuaded that he has adduced sufficient evidence of intentional conduct to destroy the text exchanges. Mr. Gaines questions the veracity of ▓▓▓▓ testimony regarding the reasons he did not preserve the missing items during the MSP's cell phone transition. Mr. Gaines quite properly notes that ▓▓▓▓ credibility has been gravely undermined in other contexts and his suggests that testimony is questionable in this case because of J.B.'s 2023 letter suggesting that ▓▓▓▓ had made him promises that went unfulfilled. In other words, Mr. Gaines suggests that ▓▓▓▓ would have had a motive to "fail to preserve" evidence proving that he had made unauthorized promises to his cooperating witness.

While Mr. Gaines's argument regarding ▓▓▓▓ credibility is not a frivolous one, this Court does not find that he has met his burden to show bad faith conduct. Mr. Gaines has not made an explicit argument that the A.W. videos were destroyed in bad faith, and this Court finds no evidence that they were. ▓▓▓▓ took appropriate steps to preserve his text exchanges with A.W. and it is entirely believable that a user seeking to preserve text messages would be unaware that videos attached to those messages would not also be preserved. The closer question pertains to J.B., because it is beyond dispute that ▓▓▓▓ took no steps to preserve his text exchanges with J.B. when he preserved his text exchanges with A.W. and another cooperating witness. The record contains no evidence contradicting ▓▓▓▓'s testimony that his text exchanges with J.B. stopped at the time of J.B.'s arrest in April, 2022. It is believable, therefore, that the existence of those text exchanges from about eighteen months prior would not have been at the forefront of ▓▓▓▓'s mind during MSP's cell phone transition in late 2023.

Of course, the onus was on the Government to have better procedures for the preservation of evidence from its multitude of law enforcement sources, and it has failed in that task.[6] While this Court finds no due process or *Brady* violation, it believes that there are mechanisms short of dismissal that it can employ to ensure that Mr. Gaines's defense will not be unfairly impaired by the missing chain of texts. Those mechanisms could include, but are not limited to, precluding the Government's use of J.B. as a witness, restricting the scope of the Government's examination of J.B. about the 2023 Letter, or instructing the jury that an adverse inference can be drawn from the fact that the Government failed to make the texts available. This Court recognizes that some of those possible mechanisms could be detrimental to the defense case if, for example, the defense wants J.B. to testify as a witness. Accordingly, this Court declines to finalize its ruling on the mechanism it will use to alleviate any impairment to Mr. Gaines's defense until Mr. Gaines has had an opportunity to propose his preferred mechanism.[7] The Government will then be afforded an opportunity to respond to the proposal before this Court makes a final decision.

### III.  CONCLUSION

For the reasons stated above, this Court finds no violation of the Speedy Trial Act or Mr. Gaines's Sixth Amendment right to a speedy trial. This Court also finds dismissal on the basis of a *Brady* or due process violation to be unwarranted, although this Court will take alternative steps to ensure Mr. Gaines suffers no prejudice from the missing text messages. A separate order will

---

[6] This Court will also deny Mr. Gaines's *pro se Jencks* motion, ECF 512-1, which related to the loss of communications with cooperators J.S. and J.B. that were contained on ▉▉▉'s hard drive. This Court has discussed the missing messages with J.B. at length, and the Government has produced all messages between ▉▉▉ and J.S.

[7] In proposing an alternative mechanism to eliminate any impairment to the defense, Mr. Gaines of course will not waive his position that dismissal would have been the appropriate remedy.

issue denying Mr. Gaines's motions to dismiss and ordering defense counsel to identify his preferred two-week window for trial.

Dated: November 25, 2024

                                                                          /s/
                                          Stephanie A. Gallagher
                                          United States District Judge