IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIM. NO. SAG-22-0125 |
| RODNEY GAINES, | |
| Defendant | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE VERDICT ON COUNT FIVE**

The United States of America, by counsel, hereby responds to the motion by the Defendant Rodney Gaines to vacate the jury's verdict on Count Five.  ECF 732.  The motion claims that the government constructively amended Count Five during closing argument.  In actuality, the government's argument was consistent with the language of Count Five and with the elements of the offense charged in that count.  Therefore, the Court should deny motion.

**BACKGROUND**

Count Five of the Third Superseding Indictment (ECF 273) charges the Defendant with conspiracy to possess firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(o).  Count Five reads as follows:

1

> **COUNT FIVE**
> (Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime)
>
> The Grand Jury for the District of Maryland further charges that:
>
> From in or about April 2021 and until on or about January 31, 2022, in the District of Maryland and elsewhere, the defendants,
>
> **RAEKWON DORSEY,**
> **AND**
> **RODNEY GAINES,**
> a/k/a "BUTTER," a/k/a "BUTTERS," a/k/a "BUTTA,"
>
> did conspire to possess firearms in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy to possess with the intent to distribute cocaine and cocaine base, as charged in Count One, which is incorporated by reference herein.
>
> 18 U.S.C. § 924(o)

ECF 273 at 9.

The predicate offense incorporated into the 924(o) count is Count One of the indictment, which charges the Defendant with conspiracy to distribute narcotics. Count One reads as follows:

> **COUNT ONE**
> (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)
>
> The Grand Jury for the District of Maryland charges that:
>
> From in or about April 2021 and continuing until on or about April 7, 2022, in the District of Maryland and elsewhere, the defendants,
>
> **JAMAL BROWNLEE,**
> a/k/a "MAL,"

2

> RAEKWON DORSEY,
> KIMBERLY DOWDEN,
> RODNEY GAINES,
> a/k/a "BUTTER," a/k/a "BUTTERS," a/k/a "BUTTA,"
> RAHJEEM GRAVES,
> a/k/a "BABY J," a/k/a "J,"
> TONYA HATCHETT,
> GREGORY HENDRICKS,
> DEANDRE HILL,
> a/k/a "BLACK,"
> ANDRE MILLS,
> a/k/a "DRE,"
> JAMES SAMMS,
> TASHA WOODYARD,
>
> did knowingly and willfully combine, conspire, confederate and agree with one another and with others known and unknown to the Grand Jury to distribute and possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and 280 grams or more of a substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841.

ECF 273 at 1-2.

Count One alleged additional manners and means, including that members of the conspiracy possessed firearms in furtherance of their drug-trafficking activities:

> 7. Members of the conspiracy possessed firearms in furtherance of their drug trafficking activities, including this conspiracy.

ECF 273 at 3.

The jury convicted the Defendant on both counts, as well as substantive drug distribution/possession with the intent to distribute counts charged in Counts Eight and Twelve.

The Defendant's constructive amendment argument is essentially that the government improperly expanded the scope of Count Five during closing argument (a copy of the closing arguments of the parties is attached as Exhibit 1 to this memorandum). The defense argument ignores the totality of the language in Count Five, which incorporates Count One. The defense argument also ignores the scope of the evidence that was relevant to Count Five. Because the

3

government's argument was consistent with Count Five's language and with the relevant evidence, the motion to vacate should be denied.

## ARGUMENT

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const., Amend. V. A "constructive amendment" to an indictment (also called a "fatal variance") occurs "when the government, usually through its presentation of evidence or argument, or the district court, usually through its jury instructions, 'broadens the possible bases for conviction beyond those presented by the grand jury.'" *United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016) (internal citations omitted). "The key inquiry is whether a defendant has been tried on charges other than those listed in the indictment." *Id.* (quoting *United States v. Allmendinger,* 706 F.3d 330, 339 (4th Cir. 2013)).

In this case, there was no constructive amendment because the government's closing argument properly focused on the allegations of Count Five and on the required elements of Count Five. The argument did not impermissibly expand the scope of Count Five or invite the jury to convict on Count Five on grounds broader than charged in the count. There are several reasons why the defense's constructive amendment argument is without merit.

First, Count Five expressly incorporated the entirety of Count One (the general narcotics conspiracy count); therefore, the allegations of Count One were part and parcel of the allegations of Count Five. It was proper (and necessary) for the government to discuss the overall allegations of Count One because Count One was the crime in "furtherance" of which the firearms conduct alleged in Count Five was occurring. Count One itself included allegations of the possession of

4

firearms by the members of that conspiracy and it was certainly part of Gaines's drug conspiracy that he and his co-conspirators possessed firearms as part of their drug activity.

Count Five's incorporation of Count One defeats the defense argument that the government improperly amended Count Five by reference to the broader firearms evidence or the possession of firearms by persons other than Gaines or Raekwon Dorsey.1  That is because the broader firearms allegations were part of Count One, which itself was the predicate conviction for Count Five. Put another way, the reason Gaines engaged in the conspiracy to possess firearms in Count Five was because he was a member of the armed drug trafficking conspiracy charged in Count Five. That was the government's theory and that was how Count Five was charged.

Indeed, it was a necessary aspect of the "furtherance" element of the § 924(o) charge that the government would relate Count Five to its predicate count during the closing argument. The elements of Count Five (as instructed to the jury) on their face included a connection between the firearms possession conspiracy and the predicate "drug-trafficking crime" (the drug conspiracy in Count One), and in effect required the government to prove that Gaines was conspiring to possess firearms (Count Five) because of his membership in the drug conspiracy (Count One). *See* Court's Jury Instructions2 at 57-58 (discussing elements of Count Five and 18 U.S.C. § 924(c)

---

1   The specific incorporation of Count One into Count Five also distinguishes this case from *United States v. Randall*, 171 F.3d 195 (4th Cir. 1999) (*recognized as abrogated on other grounds in United States v. Banks*, 29 F.4th 168 (4th Cir. 2022)), the principal case relied on by the defense motion.  ECF 732 at 3-4.  In *Randall*, the indictment charged a particular offense as the predicate crime in an 18 U.S.C. § 924(c) count, but the government then proved a different predicate offense at trial.  *Id.* at 209.  This case is the opposite of what happened in *Randall*.  The indictment alleged Count One as the predicate offense in Count Five, and the government's argument properly connected Count Five to the charged predicate offense of Count One.  The government in this case did exactly what the Fourth Circuit in *Randall* directed.

2   The government citations to the jury instructions are to the set of instructions provided by the Court prior to the instructions being read.  The government is also going to request a transcript

5

violation that would be objective of § 924(o) conspiracy).

The "furtherance" element of Count Five made it necessary and appropriate for the government to discuss the broader narcotics conspiracy (and its members' possession of firearms) in explaining why Gaines was seeking to possess firearms as charged in Count Five. Gaines's membership in an armed drug-trafficking conspiracy (Count One) was his motivation, his reason, and his purpose, for entering into the conspiracy as alleged in Count Five. As the jury was instructed by the Court, the fact that firearms are "furthering" a predicate drug-trafficking offense is a required element of a section 924(c) or 924(o) charge.

Second, even if Count One had not been expressly incorporated into Count Five, the evidence of Gaines's membership in an armed drug-trafficking conspiracy was still relevant evidence as to his participation in the Count Five 924(o) conspiracy. As stated above, a § 924(c) offense (which is the goal of a § 924(o) conspiracy) includes as an element that a person possess firearms in "furtherance" of the predicate drug-trafficking crime (or, in a different case, a crime of violence). The government's theory of the case was that Gaines was a member of an "armed drug-trafficking" conspiracy and that he was involved in the acquisition and possession of firearms because of that membership in that armed drug-trafficking conspiracy. Gaines's motive for conspiring to possess firearms was because he was a member of that armed drug-trafficking conspiracy. The government's argument properly pointed the jury to the evidence of that motive. *See Kilmartin v. United States*, 2022 WL 19618, at *5 (D. Me. Jan. 3, 2022) (unpublished) (rejecting constructive amendment argument based on government's alleged insertion of improper intent element, because intent-related evidence would have been admitted regardless because

---

of the Court's instructions as read.

defendant's "intent was plainly relevant to and admissible on other counts … Furthermore, arguments and evidence of Petitioner's intent, while not necessary to establish Petitioner's guilt on Count One in the absence of the constructive amendment, would likely have been admitted even if counsel had successfully objected to the constructive amendment.").

Third, the defense's argument fails to take into consideration the fact that the overall possession of firearms by various members of the drug-trafficking organization was still relevant to Count One and was going to be a part of the government's closing argument, even without the Count Five charge. While acknowledging that the possession of firearms was alleged in Count One, the defense motion ignores that allegation by essentially faulting any part of the government's closing argument for even making mention of any possession of firearms in this case not directly attributable to Gaines. But there was no fault in the government making that argument. The broader possession of firearms in this case was directly relevant to Count One (in addition, as discussed already, to also being relevant to Count Five by virtue of Count One being wholly incorporated into Count Five).

For all of those reasons, the government's argument was proper. A closer review of the government's closing argument (transcripts attached as Exhibit 1) confirms that the government's argument adhered to Count Five as charged and to the government's theory that Gaines had engaged in a conspiracy to possess firearms (Count Five) in furtherance of, and because he was a member of, the drug conspiracy (Count One), which was an armed drug-trafficking conspiracy.

Early on during the argument, the government introduced Count Five as follows:

> Count Five charges Mr. Gaines with conspiracy to possess firearms in furtherance of that drug trafficking crime. *That's the drug conspiracy that we just talked about.*
>
> Ladies and gentlemen, this was an *armed drug trafficking conspiracy*. Firearms

7

> recovered from a dig site, from residences, from a baby's blanket, from the person of Tasha Woodyard. *Mr. Gaines's attempts to acquire firearms from his co-conspirator, Raekwon Dorsey*, on January 31st, 2022. This is certainly armed drug trafficking, and Mr. Gaines had *an agreement that firearms would be possessed in connection with this drug conspiracy*. That is Count Five and that's briefly the evidence.

Exhibit 1 at 7-8 (emphasis added). This was all appropriate argument. The government's discussion of Count Five was that it involved the possession of firearms in connection with the drugs conspiracy in Count One – that is, "the drug conspiracy we just talked about." The government discussed its theme: that Gaines was a member of an "armed drug trafficking conspiracy," which was consistent with wanting to possess firearms "in furtherance of" that armed drug trafficking conspiracy. The government then discussed various examples of firearms possession: the firearms recovered from a dig site, the firearm from the Tasha Woodyard baby blanket (which involved a residence where Gaines had personally resided and it was the government's theory that the firearm belonged to Gaines), and of course Gaines's attempt to acquire firearms from Raekwon Dorsey during January 2022. Indeed, Dorsey is specifically mentioned as the "co-conspirator" during the discussion of Count Five.

Later, the government returned to the issue of firearms possession and to Count Five. Consistently with the allegation of Count One and the evidence of Gaines being a member of an armed drug-trafficking conspiracy, the government discussed firearms as a general category of evidence and as being a part of the overall drug business. Exhibit 1 at 48. Such argument was consistent with Count One, which was (again) incorporated in its entirety into Count Five. That discussion included reference to the testimony of drug expert Special Agent Welsh, cooperating witness testimony, and the specific firearms evidence from the dig-site and from 65 Carroll View (where Tasha Woodyard had attempted to sneak a gun out of the house wrapped in her son's baby

8

blanket and which was a gun the government attributed to Gaines). Exhibit 1 at 48-49. All of that evidence supported the government's theory that Gaines was a member of an armed drug-trafficking conspiracy, as charged in Count One, and that he was therefore motivated to possess firearms in "furtherance" of that conspiracy.

The most extensive portion of the government's discussion of the firearms evidence focused on the January 2022 communications and traffic stop involving Raekwon Dorsey, the named co-conspirator in Count Five:

> And, of course, we've heard plenty of evidence about Mr. Gaines's attempt to acquire a gun. There were text message and communications between him on January 28th and 29th with an individual named Raekwon Dorsey. There's discussion of Mr. Gaines wanting a gun. Mr. Dorsey offers him a nine-millimeter, a nine, and a .40 caliber, a 40. And there's a description, the 40 is going to have beam and a night light. There's even a photograph provided of one of the guns. And to be very clear, there's been discussion of this during the course of the case. Of those two guns, ladies and gentlemen, the one on the bottom was not one of the ones that was recovered. But the one on the top I'm going to talk about that in a minute.
>
> Mr. Gaines and Mr. Dorsey. Mr. Dorsey had been identified by this point because law enforcement did surveillance of him and Mr. Gaines meeting on October 1st, 2021, a few months earlier. Mr. Dorsey is the man in the red Chevy Colorado truck, so law enforcement knew who to look for. And on January 31st, 2022, they find Mr. Dorsey. They knew to look for him. They knew a gun deal was afoot, they stop him. MSP Trooper Daryl [Harper] testified that firearms and clips and ammunition were found inside that truck. A nine-millimeter and a .40 caliber. Not the bottom gun, not this bottom gun, but the one on top.
>
> I've laid them side by side here, ladies and gentlemen. The weapon on the top image, that image was sent by Mr. Dorsey and the nine-millimeter gun that was recovered. There is no question that they are the same gun. Take a look at it for yourselves. The squiggly lines at rear of the barrel of both weapons, there's a curve design feature on the handle of the weapon. And you'll notice that the triggers on both images are distinctive. Trooper Harper wasn't sure; he thought it might be a safety feature or something. These are the same gun.

Exhibit 1 at 49-51.

9

Immediately following that discussion of the January 2022 Dorsey firearms events, the government summarized its theory and the evidence as to Count Five:

> Mr. Dorsey offered guns, fortunately they were intercepted before they could reach Mr. Gaines. And the reason Mr. Gaines is in the business of firearms is because this is armed drug trafficking. *That is Count Five; that is the conspiracy to possess firearms in furtherance of a drug trafficking crime.*

Exhibit 1 at 51 (emphasis added). That language was the government's theory as to Count Five in a nutshell: Dorsey offering guns to Gaines (the agreement to possess firearms), for the "reason" that Gaines was "in the business of firearms []because this is armed drug-trafficking" (thus specifically arguing that the firearms were sought in furtherance of the drug conspiracy, Count One). As the government stated, "That is Count Five." Exhibit 1 at 51.

Notably, in its initial discussion of Count Five, the only time the government ever mentioned a "coconspirator" was when it named Raekwon Dorsey, the named coconspirator in Count Five. Exhibit 1 at 7. Moreover, the government's discussion of the Gaines / Dorsey firearms transaction was the most extensive and detailed discussion of firearms evidence in this case. Exhibit 1 at 49-51. The government did mention firearms possession in general and did mention firearms possession by Gaines and other members of the drug conspiracy, but that evidence was relevant to the case because it was part of the drug conspiracy evidence in Count One and because the existence of the armed drug conspiracy (again, Count One) was the motivating factor behind Gaines's conspiracy to possess firearms in Count Five. In short, the closing argument was completely consistent with elements of § 924(o) as charged in Count Five.[3]

---

3    In fact, the defense closing argument approached the charges and the evidence in generally the same way. The defense argued that Count One was the "foremost" charge and that the other charges were "a little bit redundant" with Count One:

10

There is a final reason why no constructive amendment problem exists in this case: the Court's jury instructions. The Court's jury instructions were quite clear in explaining the elements of Counts One and Five to the jury and in explaining the particular requirements of proof for each count. In particular, given the current defense complaint, the Court's instructions specifically read the entirety of both Counts One and Five – including the coconspirators charged in each count – to the jury. Specifically, the Court instructed the jury that Gaines was charged in Count Five with a particular conspiracy to possess firearms and that Gaines's charged co-conspirator was Raekwon Dorsey. *See* Court's Jury Instructions at 57 (reading Count Five). Thus, the jury was specifically instructed as to the scope of each count and the conspirators named in each count. As such, even if there were some possible confusion from the government's argument (which there was not), the totality of the record, including the Court's specific explanation of the counts, made clear to the jury the scope and particular allegations of each count. *See Moore*, 810 F.3d at 937 (rejecting constructive amendment argument based in incorrect jury instructions upon consideration of the "totality of the circumstances here, including the jury instructions, the verdict form provided to the jury, the arguments of the parties, and the evidence" and where the "bulk of the jury instructions properly tracked the indictment and omitted any

---

> So we'll start with the charges. And you've heard the charges several times now, and I'm going to focus first and foremost, I'll get to all of them, but first and foremost on the conspiracy counts. Basically a conspiracy case, and the remaining charge, important as they are, are a little bit redundant of the overall conspiracy theory that the Government is urging upon you.

Exhibit 1 at 59. There was nothing wrong with the defense approaching the counts this way. It was particularly reasonable as to Count Five, the predicate offense for which was Count One. But the defense's constructive amendment claim is inconsistent with its own approach to the evidence during argument.

11

mention" of the mistaken theory"); *United States v. Mariano*, 729 F.3d 874, 882–83 (8th Cir. 2013) (rejecting constructive amendment claim where, although government made "fleeting" reference to incorrect stolen credit card number during closing argument, the jury instructions "referred specifically to the attempted credit card purchase that was charged in the indictment, while making no mention of the second stolen card").

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court deny the Defendant's motion to vacate the guilty verdict on Count Five.

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By:       /s/
LaRai N. Everett
Michael C. Hanlon
Assistant United States Attorneys

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4895
Michael.hanlon@usdoj.gov

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 14th day of May 2025, a copy of the foregoing response was provided to Charles Burnham, Esquire via CM/ECF.

                                                                 /s/
                                        Michael C. Hanlon
                                        Assistant United States Attorney